UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CRIMINAL ACTION NO. 1:15-CR-00004-GNS-2

UNITED STATES OF AMERICA                                    PLAINTIFF

v.

CHARLES HENRY ICKES                                       DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon the Motion for Discovery (DN 135) filed by Defendant Charles Henry Ickes ("Ickes"). Fully briefed, this motion is ripe for a decision. For the following reasons, Ickes' motion is **DENIED**.

### I. SUMMARY OF FACTS AND CLAIMS

On April 22, 2015, a grand jury sitting in this District handed down a superseding indictment that added Ickes as a co-defendant to Jason Borden ("Borden"). (Superseding Indictment, DN 52). A grand jury handed down a second superseding indictment on June 10, 2015, which added a third defendant, Joshua Preston Moore ("Moore"). (Second Superseding Indictment 1, DN 69). Ickes is charged with conspiring "to knowingly and intentionally possess with the intent to distribute fifty grams or more of methamphetamine" in violation of 21 U.S.C. §§ 841(b)(1)(A)(viii) and 846. (Second Superseding Indictment 1).

On October 13, 2015, Ickes filed his Motion for Discovery. (Def.'s Mot. for Disc., DN 135). The United States has filed its response. (Pl.'s Resp. to Mot. for Disc., DN 142). The time to file a reply has elapsed. The motion is thus ripe for adjudication.

### II. DISCUSSION

In his motion, Ickes seeks a number of types of discovery: (1) the statements of his co-defendants, both in this case and in a related state court case; (2) any cooperation agreements that

his co-defendants have made with the United States; (3) the tax returns for his co-defendants for an unspecified period of time; (4) "lineup photos . . . photographic show ups, and reports stating results of such and the circumstances surrounding them"; (5) records concerning the training of and accuracy of the narcotics-detection dog who alerted to the package of methamphetamine forming part of the factual basis of this matter; (6) the criminal background of Ickes' co-defendants; (7) the "postal personnel files on all individuals involved in the search of the subject package"; and (8) the regulations and procedures of the United States Post Office "as it pertains to the profiling, selection, presentment for drug dogs, and all aspects surrounding the internal search of packages." (Def.'s Mot. for Disc. 1, 3, 5, 6).

"There is no general constitutional right to discovery in a criminal case . . . ." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Instead, defendants are entitled to four kinds of evidence. First, the government must provide the statements or reports of any of its witnesses, *i.e.*, Jencks Act material, only *after* the witness has testified on direct examination. *United States v. Carter*, 621 F.2d 238, 240 (6th Cir. 1980). Second, the government must disclose evidence that is both material and favorable to the defense, *i.e.*, *Brady* material. *United States v. Baker*, 562 F. App'x 447, 454 (6th Cir. 2014). Third, the government must disclose *Brady* material "that could be used to impeach the credibility of a witness," *i.e.*, *Giglio* material. *United States v. Fort*, 55 F. App'x 222, 224 (6th Cir. 2002). Finally, Federal Rule of Criminal Procedure 16 requires the government to provide a defendant "the substance of any relevant oral statement" that he has made to a government agent *if* the government intends to use the statement at trial. Fed. R. Crim. P. 16(a)(1)(A). The government must also provide any relevant written or recorded statement by a defendant *if* it is within the government's possession, custody or control, and the attorney for

2

the government knows or could through due diligence know that the statement exists. Fed. R. Crim. P. 16(a)(1)(B)(i).

### A. Co-Defendants' Statements

Ickes argues that statements made by Borden and AW, a cooperating witness facing charges in state court arising from the same operative facts of this matter, are *Brady* material. (Def.'s Mot. for Disc. 2). Specifically, Ickes argues that each of these categories of statements may contain exculpatory *Brady* material: (1) statements AW "was seeking to protect the female link to Ickes, 'Danielle'"; (2) statements showing that Borden and AW have a relationship with a history of drug dealing; (3) statements between AW and Ickes regarding the amount of drugs and when the drugs were consumed; and (4) statements regarding AW and Borden's inability to recall information due to drug use. (Def.'s Mot. for Disc. 2). Finally, Ickes argues that because it appears unlikely that Borden would be called to testify as a government witness, Ickes is entitled to Borden's statements pursuant to Federal Rule of Evidence 801(d)(2)(E). (Def.'s Mot. for Disc. 3).

"[T]here is no absolute right to the statement of . . . co-defendants made to authorities." *United States v. Prentice*, No. 1:10-CR-00044-R, 2011 WL 5507361, at *4 (W.D. Ky. Nov. 10, 2011) (citations omitted). Ickes *is* entitled to the statements of co-defendants who will be called as witnesses for the government pursuant to the Jencks Act, meaning that he is entitled to receive these statements *after* his co-defendants have testified. *See Carter*, 621 F.2d at 240. In its response to Ickes' motion, the United States does not state whether or not it intends to call Borden or AW, which is entirely appropriate as it is "firmly established that defense counsel is not entitled to know in advance of trial who will testify for the government." *United States v. McCullah*, 745 F.2d 350, 353 (6th Cir. 1984) (citation omitted). Given this reality, Ickes' lack of

"basis to conclude [the government's assurances that it will comply with its discovery obligations] are inaccurate or disingenuous," and the speculative nature of his request for Borden's and AW's statements, the Court will deny his motion as to his co-defendants' statements. *Prentice*, No. 1:10-CR-00044-R, 2011 WL 5507361, at *4.

### B. Co-Defendants' Agreements

Ickes summarily states that AW's "statement of cooperation has not been produced." (Def.'s Mot. for Disc. 2). Such agreements are quintessential *Giglio* material; if a witness has struck a bargain with the government, it may affect his or her credibility in the eyes of the jury, and thus must be produced. *See Giglio v. United States*, 405 U.S. 150, 154 (1972). "Exculpatory and impeaching evidence must be produced 'in time for use at trial.'" *United States v. Kollman*, No. 1:10-CR-00044-R, 2011 WL 6016893, at *3 (W.D. Ky. Dec. 2, 2011) (quoting *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988)). A trial date has not yet been set in this matter, so that Ickes cannot claim that he requires speedy production of *Giglio* material for use at trial. His motion is therefore denied as to any cooperation agreements made between his co-defendants and the United States.

### C. Co-Defendants' Tax Returns

Ickes cites a number of cases for the proposition that he is entitled to discovery of Borden's and AW's tax returns. (Def.'s Mot. for Disc. 3). None of the cited cases, however, are binding authority, and all are dissimilar from this matter in that tax returns are the core of the charged offenses in those cases. *See United States v. Lloyd*, 992 F.2d 348 (D.C. Cir. 1993) (defendant convicted of aiding and abetting preparation of false federal income tax returns and fraud arising therefrom); *United States v. Wigoda*, 521 F.2d 1221 (7th Cir. 1975) (defendant convicted of subscribing to a false tax return); *Johnson v. Sawyer*, 640 F. Supp. 1126 (S.D. Tex.

1986) (taxpayer suit against the IRS). Ickes has not cited any binding or persuasive authority removing co-defendants' or witnesses' tax returns from the category of *Brady* material. As noted above, trial has not yet been set in this matter, rendering a motion compelling the United States to produce *Brady* material untimely. The Court will therefore deny the motion as to Borden's and AW's tax returns.

### D.   Lineup Photos and Reports

Ickes also requests "all lineup photos . . . , photographic show ups, and reports stating results of such and the circumstances surrounding them in preparation for a possible motion to suppress." (Def.'s Mot. for Disc. 3). The government states in its response that it has already provided a copy of the photo lineup used in this case, and will provide a new copy. (Pl.'s Resp. to Mot. for Disc. 7). For the remainder, "the government is not required to disclose to a defendant the nature of pre-trial identification procedures." *United States v. Taylor*, 707 F. Supp. 696, 705 (S.D.N.Y. 1989) (citation omitted). Accordingly, the Court will deny Ickes' motion as to these materials.

### E.   Canine Records

Ickes next argues that the "training records, standards, etc." of the narcotics-detection dog who alerted to the package of methamphetamine in this case are discoverable, and that the information would be used to support a "potential suppression motion." (Def.'s Mot. for Disc. 3-5). The United States argues that any information about the narcotics-detection dog beyond the four corners of the affidavit supporting the search and seizure warrant for the package in question is irrelevant, as any additional information would not be considered in a motion to suppress. (Pl.'s Resp. to Mot. for Disc. 8).

5

The cases Ickes cites in support of his request focus on factors to consider when determining the reliability of a drug-detection dog. (Def.'s Mot. for Disc. 4-5). Simply put, if the dog is not reliable, his positive indication does not establish probable cause. *United States v. Diaz*, 25 F.3d 392, 393-94 (6th Cir. 1994). Gunner, the drug-detection dog who alerted to the package in this case, "maintains an annual certification in the detection of narcotics odors with an accuracy rate of at least 90%." (Resp. to Mot. for Disc. Ex. A, at 6, DN 142-1). Ickes has this information regarding Gunner's training and accuracy records, and cites no authority to support the proposition that he is entitled to any video that might exist of Gunner's reaction to the package. Accordingly, the Court will deny Ickes' motions as to this information.

### F.  Co-Defendants' Criminal Backgrounds

Ickes next seeks "criminal background on 'AW' and [Jason] Borden, not previously disclosed." (Def.'s Mot. for Disc. 5). As noted above, it is "firmly established that defense counsel is not entitled to know in advance of trial who will testify for the government." *McCullah*, 745 F.2d at 353. The caveat is that *Brady* and *Giglio* material must be produced "in time for use at trial." *Kollman*, No. 1:10-CR-00044-R, 2011 WL 6016893, at *3 (internal quotation marks omitted) (citation omitted). As with other requests made in Ickes' motion, because a trial date has not been set in this matter, ordering the United States to produce *Brady* and *Giglio* material at this stage would be premature. Ickes' request is therefore denied.

### G.  Postal Workers' Personnel Files

Ickes asserts that he is "entitled to and is requesting the U.S. postal personnel files on all individuals involved in the search of the subject package." (Def.'s Mot. for Disc. 6). While Ickes relies on a non-binding case to support his argument (Def.'s Mot. for Disc. 6), there is binding case law stating that a testifying officer's personnel file is not discoverable when the only basis

6

for discovery is the defendant's speculation that it may contain *Brady* material. *United States v. Driscoll*, 970 F.2d 1472, 1482 (6th Cir. 1992). Likewise, Ickes requests the personnel files of all United States postal workers involved in the search of the package "to assess the viability of a suppression motion." (Def.'s Mot. for Disc. 6). Ickes has offered nothing more than speculation to support his request for personnel files. The United States acknowledges that, to the extent such files would contain *Brady* or *Giglio* material, it will provide that information in a timely fashion. (Pl.'s Resp. to Def.'s Mot. for Disc. 10). Ickes request is therefore denied.

### H. Postal Regulations and Procedures

Finally, Ickes seeks production of the "United States Post Office rules and regulations, as it pertains to the profiling, selection, presentment for drug dogs, and all aspects surrounding the internal search of packages," again "in order to determine the reasonableness of a suppression motion." (Def.'s Mot. for Disc. 6). Ickes has not explained on what basis he believes that the United States has access to these rules and regulations and he does not. Absent some reason to believe that the United States Post Office's rules and regulations are available only through production by the United States, the United States is under no obligation to provide them for Ickes. Accordingly, the Court will deny his motion as to this material.

### III. CONCLUSION

For the foregoing reasons, Ickes' Motion for Discovery (DN 135) is **DENIED**.

**Greg N. Stivers, Judge**
**United States District Court**
December 16, 2015

cc: counsel of record